UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA TINGAY and
GREGORY TINGAY,

               Plaintiff,                          Hon. Janet T. Neff

v.                                                Case No. 1:13-cv-1181

MICHIGAN DEPARTMENT of
HUMAN SERVICES, et al.,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss. (Dkt. #16). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiffs' complaint. Plaintiffs Amanda Tingay and Gregory Tingay, husband and wife, are the biological parents of three children (SKT, AJT, and AGT) and the adoptive parents of two children (SJT and BLT). The childrens' dates of birth are as follows: (1) SKT - 2/3/1995; (2) AJT - 10/23/1999; (3) AGT - 2/16/1998; (4) SJT - 5/12/1997; and (5) BLT - 7/8/2004. BLT is a member of the Little River Band of Ottawa Indians. Plaintiffs also care for one or more foster children.[1]

---

[1] At hearing, Plaintiffs indicated that they do not presently care for any foster children. Plaintiffs clarified that no children were removed from their home as a result of Amanda Tingay's placement on the registry. The foster children for which they had

On September 23, 2011, the Mason County Department of Human Services received a complaint alleging that BLT had been subjected to "physical abuse."  Specifically, it was alleged that Amanda Tingay "slapped BLT in the face causing marks to her left eye area."  That same day, Anna Appledorn, a Child and Protective Services employee, "interviewed" BLT.  This interview occurred on "private property" without Plaintiffs' consent or knowledge.  Appledorn discerned "three pin prick sized marks under BLT's left eye."  BLT informed Appledorn that "she got the marks from scratching herself."  BLT denied the allegation that her mother struck her.  Appledorn concluded that BLT "was not fearful of her environment and was not being physically abused."  Appledorn subsequently informed her supervisor that "she had no safety concerns and saw no evidence of abuse" during her investigation.

On September 27, 2011, Gary Brink, a Child and Protective Services investigator, and Jennifer Swiatek, a "foster care licensing worker" employed by the Michigan Department of Human Services, traveled to Mason County Central school and interviewed BLT, SJT, SKT, AJT, and AGT, as well as "another child living in [the Tingay home] as a foster child."  Brink subsequently interviewed Amanda Tingay.  Following these interviews, Brink determined that there existed "a preponderance of evidence" that Amanda Tingay had subjected one or more of the children to "maltreatment."  Given BLT's status as a member of the Little River Band of Ottawa Indians, Brink subsequently informed Bill Memberto, Director of the Little River Band of Ottawa Indians Family Services Department, as well as Kathy Lagerquist, a social worker and family services worker for the tribe, of the allegations against Amanda Tingay.  During their investigation, Brink and Swiatek failed to follow "proper forensic interview techniques" and, moreover, "intentionally falsified"[2] their reports.

---

been previously caring were placed elsewhere for reasons not articulated by Plaintiffs..

[2]Whether the allegation(s) will be factually supported remains to be seen.  Here the Court only addresses the pleadings and must assume all facts asserted by the Plaintiffs be taken as true.

On November 2, 2011, Amanda Tingay was notified by the Department of Human Services that she had been "placed on the Michigan Central registry[3] as a person responsible for maltreatment." Plaintiff was "not given any chance to prove her innocence before being placed on the central registry" in violation of her right to due process. Plaintiff immediately appealed this determination, but her appeal was denied by Martha Burns on the ground that there existed a "preponderance of evidence of maltreatment." Burns also failed to afford Tingay an administrative hearing on the matter as mandated by Michigan law.

As a result of being placed on the registry, Amanda Tingay "had her foster care license revoked and could not foster children in those 17 months."[4] Tingay was also precluded, due to her placement on the registry, from working as a substitute teacher, volunteering with her children at her church, or accompanying her children on school-related trips and activities. Plaintiffs allege that their family was subjected to various forms of government sanctioned familial interference, including "court ordered visits" and mandated psychological testing.[5] Plaintiffs further allege that as a result of Defendant Brink's and Swiatek's fabricated investigatory reports, and Amanda Tingay's resulting

---

[3] This registry as been described:

> This registry is maintained to carry out the intent of Michigan's Child Protection Law, MCL 722.621 *et seq.* MCL 722. 627(1). The law requires certain mandatory reporters-including nurses, teachers and regulated child care providers-to report incidents giving rise to "reasonable cause" to suspect child abuse or neglect. MCL 722.623(1)(a). The contents of the registry are generally confidential, subject to a list of exceptions which allow disclosure to a person named in a report as an alleged perpetrator as well as, for instance, to child care regulatory agencies. MCL 722. 627(2), (2)(f) and (2)(r).

*Jackson v. Wayne County Juvenile Detention Facility*, 2006 WL 1084334 at *1 (Mich. Ct. App., April 25, 2006).

[4] At hearing, Plaintiffs stated that as a result of the incidents described herein they have been unable to regain their foster care license and, as a result, have been (and continue to be) denied the opportunity to serve as foster parents.

[5] Plaintiffs' claims against Defendant LuAnne Briggs concern her involvement in this mandated testing. These particular allegations are detailed below.

placement on the central registry, their ability to instruct and interact with their children as they saw fit was significantly impaired.

On November 11, 2011, the Little River Band of Ottawa Indians "held tribal court to review the status and progress of the adoptive home of BLT." Having been informed that the allegations against Tingay had been substantiated, the tribal court subjected Plaintiffs "to months of hearing[s] and court orders by the LRBOI court because of the neglectful and false substantiation of maltreatment." The tribal court also expressed to Plaintiffs that BLT and SJT may be removed from their care which was "severely emotionally damaging" to Plaintiffs.

Amanda Tingay was eventually afforded an administrative hearing which was conducted on April 30, 2013, by Administrative Law Judge Elizabeth Buren. On May 28, 2013, ALJ Buren concluded that the Michigan Department of Human Services "failed to establish by a preponderance of evidence that [Amanda Tingay's] name was appropriately placed on the registry." The Department of Human Services was ordered to remove Amanda Tingay's name from the central registry within 10 days.

Plaintiffs initiated this action, without benefit of counsel, on October 28, 2013, against the Michigan Department of Human Services as well as the following individuals: (1) Martha Burns; (2) Gary Brink; (3) Jennifer Swiatek; (4) Mary Jo French; (5) LuAnne Briggs; and Anna Appledorn. Plaintiffs allege various federal and state law claims as discussed below. Plaintiffs seek monetary and injunctive relief. Defendants now move to dismiss Plaintiffs' claims. Specifically, Defendants assert that Plaintiffs' allegations fail to state a claim on which relief may be granted. Defendants further assert that they are entitled to qualified immunity and Eleventh Amendment immunity.

# LEGAL STANDARD

A.      Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief.  *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*  As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the

wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

B.      Qualified Immunity

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

*see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).  The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve.  *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity.  *See Callahan*, 555 U.S. at 232.  On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted.  The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right."  *Id.*  The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201).  The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202).  The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful."  *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights.  If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence,

such must be considered pursuant to the summary judgment standard articulated above.  Thus, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate.  *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights).  Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself."  *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)).  In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting."  *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177).  A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question.  *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct.  *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher,* 398 F.3d at 845.  Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 555 U.S. at 236. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

## ANALYSIS

### I.          Eleventh Amendment

Defendants assert that Plaintiffs' claims against the Michigan Department of Human Services, as well Plaintiffs' claims asserted against the individual defendants in their official capacity, must be dismissed pursuant to the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).

An action asserted against a State official in his official capacity is considered an action against the State.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law.  *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  As previously noted, Plaintiffs seek both monetary and injunctive relief in this matter.

In sum, Defendant Michigan Department of Human Services is immune from suit in this matter.  To the extent that Plaintiffs seek monetary relief against the individual defendants in their official capacity, such claims are likewise subject to dismissal under the Eleventh Amendment.  However, to the extent that Plaintiffs seek injunctive relief, the Eleventh Amendment affords the individual defendants no relief.  Accordingly, the undersigned recommends that Plaintiffs' claims against the Michigan Department of Human Services be dismissed.  The undersigned further recommends that Plaintiffs' claims, seeking monetary damages, against the individual defendants in their official capacity be dismissed.

## II.  Parental Rights - Substantive Due Process  (Count I)

Plaintiffs assert claims against Defendants Brink, Burns, Swiatek, French, and Appledorn for violation of their "parental rights."  Specifically, Plaintiffs assert that Defendants falsely placed Amanda Tingay on the Michigan central registry and, thereby, violated the couple's right "to the care, companionship, and relations" with each other and with their children.  Plaintiffs assert these claims pursuant to both the United States and Michigan constitutions.

A.      Federal Law Claims

1.      Defendants Brink and Swiatek

Plaintiffs assert a great many allegations against Defendants Brink and Swiatek, but the gravamen of their claims against Brink and Swiatek are that the pair "deliberately and intentionally falsified their investigative reports" resulting in Amanda Tingay being placed on the central registry.

The Supreme Court "has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). As the Supreme Court has declared, it is "plain beyond the need for multiple citation" that a parent's "desire for and right to the companionship, care, custody and management of his or her children is an interest far more precious than any property right." *Id.* (citation omitted).  The "fundamental right of parents to make decisions concerning the care, custody, and control of their children" is perhaps "the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Id.* at 689-90 (citation omitted).  Furthermore, the "fundamental constitutional right to family integrity extends to all family members, both parents and children." *O'Donnell v. Brown*, 335 F.Supp.2d 787, 820 (W.D. Mich. 2004).

Nevertheless, the right to familial integrity and familial association "is neither absolute nor unqualified." *Kottmyer*, 436 F.3d at 690.  Specifically, the right to familial integrity is limited by an equally compelling governmental interest "in the protection of children, particularly where the children need to be protected from their own parents." *Id.*  When governmental conduct burdening a fundamental right is challenged, the government must demonstrate that its actions "are narrowly tailored to a compelling governmental interest." *O'Donnell*, 335 F.Supp.2d at 820-21.

Defendants first assert that they are entitled to relief because "[t]here is no fundamental right to be free from investigations of alleged child abuse."  While this is not an inaccurate statement, it is not particularly relevant as Plaintiffs' claims are not premised upon the mere fact that they were investigated for alleged child abuse.  Plaintiffs instead allege that Defendants Brink and Swiatek "deliberately and intentionally falsified their investigative reports" resulting in Amanda Tingay being placed on the central registry which, in turn, resulted in various harms to their right of familial integrity and familial association.  Specifically, Plaintiffs allege that as a result of Amanda Tingay being falsely placed on the central registry, they were prevented from (and still are prevented from) serving as foster parents.  Plaintiffs further allege that Amanda Tingay was prevented from participating in volunteer activities with her children or accompanying her children on school-related trips and activities.  Plaintiffs allege that their family was compelled to participate in "court ordered visits" and psychological testing.  Plaintiffs also allege that as a result of Defendants' fabricated investigatory reports, and Amanda Tingay's resulting placement on the central registry, their ability to instruct and interact with their children as they saw fit was significantly impaired.  In this regard, Plaintiffs allege that they:

> were made to feel like their love and affection towards each other were wrong.  [We] stopped hugging or kissing in front of [our] children because the investigation caused them to feel it was wrong.  [We] stopped flirting with each other in front of the children.  This was a violation of the right of liberty to express themselves as they saw fit in front of their children.  [We] feared if [we] showed affection they would have [our] children removed from [our] home.

Stated differently, Plaintiffs do not allege that they were harmed by the mere fact of the aforementioned investigation, but instead allege that their right of familial integrity and familial association was impaired by Defendants' intentional acts of dishonesty.  While the government may

possess a compelling interest in investigating allegations of child abuse, the government does not possess a compelling interest in intentionally falsifying the results of such investigations.

Defendants further argue that they are entitled to relief because "there is no fundamental right to not be placed onto the central registry." Defendants have misstated, however, the authority cited in support of this statement. Defendants cite to *Vermeesch v. Hall*, 2000 WL 654953 at *7 (E.D. Mich., April 24, 2000). The *Vermeesch* court did not conclude that there exists no fundamental right to not be placed on the central registry. Instead, the *Vermeesch* court merely concluded that the defendants *in that case* were entitled to qualified immunity as to claims regarding the plaintiff's placement on the central registry. *Id.* There exists, however, a significant difference between the *Vermeesch* case and the present action. In *Vermeesch*, the defendants presented evidence demonstrating that placing the plaintiff on the central registry was reasonable under the circumstances. *Id.* On the other hand, in the present matter Defendants have presented no evidence, but are instead simply challenging the allegations in Plaintiffs' complaint. Plaintiffs' allege that Defendants Brink and Swiatek "deliberately and intentionally falsified their investigative reports" resulting in Amanda Tingay being placed on the central registry. Plaintiffs have alleged that Amanda Tingay's placement on the central registry caused significant damage to their right of familial integrity and familial association. No reasonable person would have believed that it was lawful to interfere with a fundamental constitutional right through intentionally false conduct. Accordingly, the undersigned recommends that Defendant Brink and Swiatek are not entitled to summary judgment or qualified immunity as to Plaintiffs' federal law claims for violation of their right to familial integrity and familial association.

2.      Defendant Burns

In the context of this particular claim, Plaintiffs assert two allegations against Defendant Burns.  First, Plaintiffs assert that Burns denied Amanda Tingay's request to be removed from the central registry.  According to Plaintiffs, Burns denied this request based on the results of the investigation conducted by Defendants Brink and Swiatek.  While Plaintiffs allege that Brink and Swiatek falsified their reports, they do not allege that Burns was aware of such or likewise engaged in similar dishonesty.  This particular allegation, therefore, seeks to impose liability on Burns vicariously, essentially holding her liable for the conduct of her subordinates of which she was not aware.

Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability.  *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998).  Plaintiff "must show that a supervising officer did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Walters v. Stafford*, 317 Fed. Appx. 479, 486 (6th Cir., Mar. 18, 2009) (citing *Bass*, 167 F.3d at 1048). Likewise, liability does not attach to a supervisory employee "based solely on the right to control employees, or simple awareness of employees' misconduct."  *Stafford*, 317 Fed. Appx. at 486-87. Instead, Plaintiff must demonstrate *personal involvement* by a particular defendant.  *See Bass*, 167 F.3d at 1048 (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior").  Accordingly, the undersigned recommends that this particular claim against Defendant Burns be dismissed.

Plaintiffs also allege that Burns "failed to follow proper procedures" with respect to Amanda Tingay's request to be removed from the central registry.  Specifically, Tingay alleges that on or about November 2, 2011, she requested an administrative hearing regarding her placement on the

central registry.  Michigan law provides that if a request to be removed from the central registry is denied, the Department of Human Services "shall hold a hearing to determine by a preponderance of the evidence whether the report or record in whole or in part should be amended or expunged from the central registry on the grounds that the report or record is not relevant or accurate evidence of abuse or neglect."  Mich. Comp. Laws § 722.627(6).  Tingay concedes, however, that she was afforded an administrative hearing which resulted in her removal from the central registry.  While the Court is troubled by the fact that more than one full year passed before the hearing occurred, Plaintiffs have not alleged that this delay is attributable in any way to any action or inaction by Defendant Burns. Accordingly, the undersigned recommends that Defendant Burns is entitled to dismissal of this claim.

### 3.     Defendant French

The only allegations that Plaintiffs advance against Defendant French are that French approved the allegedly falsified report completed by Defendant Swiatek and, moreover, failed to properly train or supervise Swiatek.  Plaintiffs do not allege that French had knowledge of Swiatek's allegedly improper conduct or that she in any way participated in such.  Instead, Plaintiffs merely seek to hold French vicariously liable for the alleged actions of Defendant Swiatek.  As discussed in the preceding section, such does not constitute a valid cause of action.  Accordingly, the undersigned recommends that Plaintiffs' federal law familial rights claims against Defendant French be dismissed.

### 4.     Defendant Appledorn

In their complaint, Plaintiffs' allege that Appledorn was the individual who initially investigated the abuse allegations against Amanda Tingay.  Plaintiffs allege that Appledorn concluded

that BLT "was not fearful of her environment and was not being physically abused."  Plaintiffs further allege that Appledorn informed her supervisor that "she had no safety concerns and saw no evidence of abuse" during her investigation.  These allegations fail to state a claim for violation of Plaintiffs' right to familial integrity.  Accordingly, the undersigned recommends that Plaintiffs' federal law family rights claims against Defendant Appledorn be dismissed.

B.  State Law Claims

Plaintiffs' also allege that Defendants violated their rights under several provisions of the Michigan constitution.  Defendants assert that they are entitled to relief for several reasons.  First, as Defendants correctly recognize, the due process protections afforded under Michigan law are "no greater" than those afforded under federal law.  *See, e.g., Wilson ex rel. v. University Preparatory Science and Math High School*, 2012 WL 3498889 at *3 (E.D. Mich., Aug. 14, 2012) ("Michigan's guarantees of due process. . .are construed no more broadly than federal guarnatees") (quoting *Gazette v. City of Pontiac*, 536 N.W.2d 854 (1995)).  Accordingly, Plaintiffs' state law family rights claims against Defendants Burns, French, and Appledorn must be dismissed.

Defendants next assert that they are entitled to dismissal of these claims because "claims for monetary damages against individual governmental employees for alleged violations of the Michigan Constitution do not exist."  This is an accurate statement.  *See, e.g., Ritchie v. Coldwater Community Schools*, 2012 WL 2862037 at *23 (W.D. Mich., July 11, 2012).  However, as noted above Plaintiffs seek both monetary damages and injunctive relief.  Defendants have identified no authority that Plaintiffs' claims for injunctive relief are likewise barred.  Defendants further assert that they are entitled to immunity under Michigan law which provides that:

> Except for records available under section 7(2)(a), (b), and (n), the identity of a reporting person is confidential subject to disclosure only with the consent of that person or by judicial process.  A person acting in good faith who makes a report, cooperates in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action.  A person making a report or assisting in any other requirement of this act is presumed to have acted in good faith.  This immunity from civil or criminal liability extends only to acts done according to this act and does not extend to a negligent act that causes personal injury or death or to the malpractice of a physician that results in personal injury or death.

Mich. Comp. Laws § 722.625.

The Court finds Defendants' argument misplaced.  By its very terms, the statute applies to individuals who *report* allegations of child abuse or assist in the investigation of such, not to individuals, such as Defendants, that *investigate* allegations of child abuse.  The case cited by Defendants in support of their interpretation lends no support to their position.

In *Warner v. Mitts*, 536 N.W.2d 564 (Mich. Ct. App. 1995), Deanna Mitts reported to the Department of Social Services that Gene Warner "had sexual intercourse with his minor daughter." *Id.* at 565.  Warner later acknowledged fondling his daughter, but denied having intercourse with her.  Criminal charges were filed against Warner, but were subsequently dismissed.  Warner then sued Mitts alleging that she, among other things, "maliciously and falsely reported to the DSS that Warner had engaged in sexual intercourse with his daughter."  *Id.*  Warner's claims were dismissed on the ground that the aforementioned statutory provision protected individuals, such as Mitts, who report in good faith allegations of child abuse.  *Id.* at 566.  There is nothing in the *Mitts* decision that supports Defendants' contention that the statute in question serves to immunize governmental employees who *investigate* allegations of child abuse.  Defendants have failed to identify any authority supporting their interpretation of the statutory provision in question and the Court has, likewise, failed to discover any

such authority.  Moreover, even if the above provision applied to Defendants Brink and Swiatek, immunity would be inappropriate because such applies only to individuals who act in good faith. Plaintiffs allege that Brink and Swiatek intentionally falsified their investigatory reports which is the antithesis of acting in good faith.

In sum, the undersigned recommends that Plaintiffs' state law family rights claims against Defendants Burns, French, and Appledorn be dismissed.  The undersigned further recommends that Plaintiffs' state law family rights claims against Defendants Brink and Swiatek seeking monetary damages be dismissed, but that Plaintiffs' claims seeking injunctive relief go forward.

## III.        Procedural Due Process  (Count II)

In Count II of their complaint, Plaintiffs assert that Defendant Burns was required to conduct a hearing before denying Amanda Tingay's request to be removed from the central registry. Plaintiffs allege that Burns' failure in this regard violated their procedural due process rights.

To establish a procedural due process violation, a plaintiff must establish: (1) that she was deprived of a protected liberty interest, and (2) that this deprivation occurred without due process of law.  *See Pittman v. Cuyahoga County Dept. of Children and Family Services*, 640 F.3d 716, 729 (6th Cir. 2011).  Due process requires that before a State violates a protected interest, it "must afford notice and opportunity for hearing appropriate to the nature of the case."  *Id.*

As previously noted, Michigan law provides that if a request to be removed from the central registry is denied, the Department of Human Services "shall hold a hearing to determine by a preponderance of the evidence whether the report or record in whole or in part should be amended or expunged from the central registry on the grounds that the report or record is not relevant or accurate

evidence of abuse or neglect."  Mich. Comp. Laws § 722.627(6).  In accordance with Michigan law, Amanda Tingay was, in fact, afforded a hearing with respect to her request to be removed from the registry.  Accordingly, the undersigned recommends that Defendant Burns' motion to dismiss be granted as to this claim.

In addition to the claim described immediately above, Plaintiffs, in the body of their complaint, assert that it was a violation of due process to place Amanda Tingay on the central registry in the first place without first affording her a hearing of some kind.  (Dkt. #1 at ¶¶ 25-27 and Dkt. #26). This language could be interpreted as asserting a procedural due process claim against the individual defendants in this matter, as well as a challenge to the constitutionality of the central registry scheme.

To the extent that Plaintiffs are asserting a due process claim against the individual defendants for failing to afford Amanda Tingay a hearing before placing her on the central registry, such claims must be dismissed on qualified immunity grounds as there exists no authority holding that the due process provisions articulated in Michigan law, outlined above, are insufficient or that an individual is entitled to a hearing prior to being placed on the central registry.  As for whether Plaintiffs are mounting a constitutional challenge to the provisions in question, Plaintiffs stated at hearing that they were not, as such was being accomplished in a separate action.

**IV.        Intentional Infliction of Emotional Distress**  (Count III)

Plaintiffs allege that "all the Defendants['] conduct was extreme and outrageous" and "[t]he defendants all intentionally caused severe emotional stress upon both plaintiffs."  Defendants assert that they are entitled to dismissal of these claims for three reasons: (1) Plaintiffs' allegations fail to state a claim on which relief may be granted; (2) Defendants are entitled to immunity under Mich.

Comp. Laws § 722.625; and (3) Defendants are entitled to immunity under the Michigan Governmental Tort Liability Act.  The Court only partially agrees.

A.      Defendants Burns, French, and Appledorn

Under Michigan law, to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege the following: (1) the defendant's conduct was "extreme and outrageous," (2) the defendant acted with "intent or recklessness," and (3) the defendant's conduct caused the plaintiff to suffer "severe emotional distress."  *Lucas v. Awaad*, 830 N.W.2d 141, 150 (Mich. Ct. App. 2013).  The *Lucas* court further clarified that "[l]iability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.*  Plaintiffs' allegations against these Defendants fall far short of this standard.  Accordingly, the undersigned recommends that Plaintiffs' intentional infliction of emotional distress claims be dismissed as to Defendants Burns, French, and Appledorn.

B.      Defendant Briggs

As noted above, Plaintiffs allege that as a result of Amanda Tingay's placement on the central registry, they were both required to participate in a mandatory psychological evaluation. Plaintiffs allege that Defendant LuAnne Briggs made the determination that they be required to undergo a psychological evaluation.  Plaintiffs further allege that Briggs improperly disseminated the results of this evaluation to "all involved in the [Little River Band of Ottawa Indians] court proceeding."

According to Plaintiffs, the results of their psychological examinations were to be provided only to the judge presiding in the tribal proceeding.

First, with respect to the decision by Briggs to require Plaintiffs to participate in psychological testing, such fails to state a claim.  Considering that Briggs acted based upon the results of an investigation that determined that the allegations against Amanda Tingay had merit, Briggs' decision to require Plaintiffs to participate in a psychological examination is not unreasonable and certainly falls short of the aforementioned standard.  The Court recognizes that Plaintiffs allege that the report on which Briggs' decision was based was intentionally fabricated, but Plaintiffs do not allege that Briggs participated in or had knowledge of such alleged fabrication.  As for Plaintiffs' allegation that Briggs improperly disseminated the results of their examination to everybody involved in the tribal proceeding, such likewise falls far short of the relevant standard as the information in question appears to have been relevant to the proceedings before the tribal court.   Accordingly, the undersigned recommends that Plaintiffs' intentional infliction of emotional distress claims against Defendant Briggs be dismissed.

C.      Defendants Brink and Swiatek

The Court reaches a different conclusion with respect to Plaintiffs' claims against Defendants Brink and Swiatek.  As discussed above, Plaintiffs allege that Brink and Swiatek "intentionally falsified" the reports on which the decision to place Amanda Tingay on the central registry was based.  The Court finds that intentionally falsifying evidence that a parent mistreated a child goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized community." *See, e.g., Innes v. Marzano-Lesnevich*, 87 A.3d 775, 795-96 (N.J. Super. Ct. App. Div. 2014) (recognizing

that false allegations against a parent of child abuse constitutes "outrageous" conduct which "go[es] beyond all possible bounds of decency" and is "utterly intolerable in a civilized community"). Accordingly, the Court finds that Plaintiffs' allegations against Defendants Brink and Swiatek state a claim on which relief may be granted.

With respect to Defendants' argument that they are entitled to immunity pursuant to Mich. Comp. Laws § 722.625, the Court reiterates that this provision appears applicable only to individuals who *report* allegations of child abuse or assist in the investigation of such, not to individuals, such as Defendants, that *investigate* allegations of child abuse. Moreover, as previously discussed, the allegations against Brink and Swiatek preclude a finding that Defendants acted in good faith as is required under the statute. Thus, this argument is rejected.

Finally, the Court concludes that Defendants Brink and Swiatek are not entitled to relief under the Michigan Governmental Tort Liability Act. In support of their position that they are entitled to governmental immunity, Defendants rely on *Odom v. Wayne County*, 760 N.W.2d 217 (Mich. 2008). A review of this decision, however, reveals that Defendants' argument is misplaced. As the *Odom* court made clear, "there is no immunity where the [government official] does not act honestly and in good faith, but maliciously, or for an improper purpose." *Id.* at 224. The allegations against Defendants Brink and Swiatek, if accepted as true, demonstrate that Defendants did not act honestly and in good faith, but instead acted with malice and for an improper purpose. Governmental immunity is an affirmative defense regarding which Defendants bear the burden. *Id.* at 227-28. Defendants have not met their burden to demonstrate that they are entitled to immunity. Accordingly, the undersigned recommends that Defendants' motion to dismiss be denied as to Plaintiffs' intentional infliction of emotional distress claims asserted against Defendants Brink and Swiatek.

**V.**          **Unreasonable Search and Seizure**  (Count IV)

As noted above, Plaintiffs allege that Defendant Appledorn interviewed BLT on September 23, 2011.  Plaintiffs allege that this interview occurred on "private property" without Plaintiffs' consent or knowledge in violation of their Fourth Amendment rights.  Plaintiffs do not identify the "private property" on which Appledorn's interview of BLT occurred, but considering the additional allegation that Appledorn "toured" Plaintiffs' home, it appears that the "private property" in question was Plaintiffs' residence.  Plaintiffs also allege that Appledorn interviewed Amanda Tingay during this encounter.  While not artfully stated, Plaintiffs have arguably advanced two separate Fourth Amendment claims.  First, Plaintiffs appear to challenge Appledorn's interview of BLT as an unlawful seizure.  Plaintiffs also appear to assert a Fourth Amendment claim with respect to Appledorn's inspection of their home.

Defendants argue that Plaintiffs' claim must be dismissed because Plaintiffs lack standing to assert claims on behalf of BLT.  The Court only partly agrees.  To the extent that Plaintiffs challenge the alleged seizure of BLT, the Court agrees that Plaintiffs lack standing to assert such a claim.  *See, e.g., Reguli v. Guffee*, 371 Fed. Appx. 590, 598 (6th Cir., Mar. 31, 2010) (parents of a minor lack standing to challenge, on Fourth Amendment grounds, the questioning of their daughter as part of an investigation into abuse allegations).  However, Plaintiffs do have standing to assert claims regarding Appledorn's alleged inspection of their home.

As is recognized, there does not exist any "social worker exception" to the Fourth Amendment.  *See, e.g., O'Donnell*, 335 F.Supp.2d at 802.  Thus, Appledorn's entry into Plaintiff's home "must satisfy the Fourth Amendment."  *Id.*  While Plaintiffs allege that Appledorn interviewed BLT "without consent," Plaintiffs do not allege that Appledorn entered their residence without consent.  In

the absence of any allegation that Appledorn entered their residence without consent, this claim must be dismissed.  Accordingly, the undersigned recommends that Plaintiffs' Fourth Amendment claims against Defendant Appledorn be dismissed.

**VI.**          **Negligence**  (Count V)

Plaintiffs allege that Defendants Brink, Swiatek, Burns, and French acted negligently in this matter.  Specifically, Plaintiffs allege that Burns and French were "negligent in the supervision of" Brink and Swiatek, respectively.  Plaintiffs allege that Brink and Swiatek negligently (and intentionally) falsified their investigative reports concerning the allegations of abuse against Amanda Tingay.  Defendants assert that Plaintiffs' claims must be dismissed because they are entitled to immunity under Michigan law.  Again, the Court only partly agrees.

Under Michigan law, where an employee of a governmental agency is alleged to have acted negligently, the employee is entitled to immunity from such claim if the following criteria are all satisfied: (1) he was acting within the scope of his employment; (2) the agency in question was engaged in the exercise or discharge of a governmental function; and (3) the individual's conduct "does not amount to gross negligence that is the proximate cause of the injury or damage."  *See Odom*, 760 N.W.2d at 228; Mich. Comp. Laws § 691.1407(2).

Based on the allegations against Defendants Burns and French, discussed herein, the Court finds that they are entitled to immunity.  Burns and French were both acting within the scope of their employment, the agency for which they were employed was engaged in the exercise of a governmental function, and Plaintiffs have failed to allege facts establishing that either defendant acted with gross negligence.  With respect to Defendants Brink and Swiatek, however, the Court reaches a

different conclusion.  Gross negligence is defined under Michigan law as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Horne v. Suburban Mobility Authority for Regional Transportation*, 2014 WL 2159397 at *3 (Mich. Ct. App., May 22, 2014). Plaintiffs allege that Brink and Swiatek intentionally falsified their investigative reports which resulted in Amanda Tingay being placed on the central registry.  If true, such constitutes gross negligence - or worse.  Accordingly, the undersigned recommends that Plaintiffs' negligence claims against Defendants Burns and French be dismissed, but that Plaintiffs' claims against Defendants Brink and Swiatek go forward.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion to Dismiss</u>, (Dkt. #16), be **granted in part and denied in part**.  Specifically, the undersigned recommends the following: (1) Plaintiffs' claims against Defendant Michigan Department of Human Services be dismissed; (2) Plaintiffs' claims seeking monetary relief against the individual defendants in their official capacity be dismissed; (3) Plaintiffs' claims seeking injunctive relief against the individual defendants in their official capacity go forward; (4) Plaintiffs' federal law family rights claims be dismissed as to Defendants Burns, French, and Appledorn; (5) Plaintiffs' federal law family rights claims against Defendants Brink and Swiatek in their personal capacity go forward; (6) Plaintiffs' state law family rights claims be dismissed as to Defendants Burns, French, and Appledorn; (7) Plaintiffs' state law family rights claims against Defendants Brink and Swiatek in their personal capacity seeking monetary relief be dismissed; (8) Plaintiffs' state law family rights claims against Defendants Brink and Swiatek in their personal capacity seeking injunctive relief go forward; (9) Plaintiffs'

procedural due process claims be dismissed; (10) Plaintiffs' state law claims for intentional infliction of emotional distress against Defendants Briggs, Burns, French, and Appledorn be dismissed; (11) Plaintiffs' state law claims for intentional infliction of emotional distress against Defendants Brink and Swiatek in their personal capacity go forward; (12) Plaintiffs' Fourth Amendment claims be dismissed; (13) Plaintiffs' state law negligence claims against Defendants Briggs, Burns, French, and Appledorn be dismissed; and (14) Plaintiffs' state law negligence claims against Defendants Brink and Swiatek in their personal capacity go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  June 27, 2014                              /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge