UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA TINGAY and
GREGORY TINGAY,

        Plaintiff,                                    Hon. Janet T. Neff

v.                                                  Case No. 1:13-cv-1181

MICHIGAN DEPARTMENT of
HUMAN SERVICES, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #73). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **dismissed**.

## BACKGROUND

The following allegations are contained in Plaintiffs' complaint. Plaintiffs Amanda Tingay and Gregory Tingay, husband and wife, are the biological parents of three children (SKT, AJT, and AGT) and the adoptive parents of two children (SJT and BLT). BLT is a member of the Little River Band of Ottawa Indians.

On September 23, 2011, the Mason County Department of Human Services received a complaint alleging that BLT had been subjected to "physical abuse." This complaint was investigated

by Anna Appledorn, a Child and Protective Services employee, who concluded that "she had no safety concerns and saw no evidence of abuse."

On September 27, 2011, Gary Brink, a Child and Protective Services investigator, and Jennifer Swiatek, a "foster care licensing worker" employed by the Michigan Department of Human Services, likewise began investigating the matter. Brink ultimately determined that there existed "a preponderance of evidence" that Amanda Tingay had subjected one or more of the children to "maltreatment." Given BLT's status as a member of the Little River Band of Ottawa Indians, Brink informed the tribe of the results of his investigation. During their investigation, Brink and Swiatek failed to follow "proper forensic interview techniques" and, moreover, "intentionally falsified" their reports.

On November 2, 2011, Amanda Tingay was notified by the Department of Human Services that she had been "placed on the Michigan Central registry as a person responsible for maltreatment." Plaintiff was "not given any chance to prove her innocence before being placed on the central registry" in violation of her right to due process. Plaintiff immediately appealed this determination, but her appeal was denied by Martha Burns on the ground that there existed a "preponderance of evidence of maltreatment." Burns also failed to afford Tingay an administrative hearing on the matter as mandated by Michigan law.

As a result of being placed on the registry, Amanda Tingay "had her foster care license revoked and could not foster children in those 17 months." Tingay was also precluded, due to her placement on the registry, from working as a substitute teacher, volunteering with her children at her church, or accompanying her children on school-related trips and activities. Plaintiffs allege that their family was subjected to various forms of government sanctioned familial interference, including "court ordered visits" and mandated psychological testing. Plaintiffs further allege that as a result of Defendant

Brink's and Swiatek's fabricated investigatory reports, and Amanda Tingay's resulting placement on the central registry, their ability to instruct and interact with their children as they saw fit was significantly impaired.

Amanda Tingay was eventually afforded an administrative hearing which was conducted on April 30, 2013, by Administrative Law Judge Elizabeth Buren. On May 28, 2013, ALJ Buren concluded that the Michigan Department of Human Services "failed to establish by a preponderance of evidence that [Amanda Tingay's] name was appropriately placed on the registry." The Department of Human Services was ordered to remove Amanda Tingay's name from the central registry within 10 days.

Plaintiffs initiated this action, without benefit of counsel, on October 28, 2013, against the Michigan Department of Human Services as well as the following individuals: (1) Martha Burns; (2) Gary Brink; (3) Jennifer Swiatek; (4) Mary Jo French; (5) LuAnne Briggs; and Anna Appledorn. Plaintiffs alleged various federal and state law claims seeking monetary and injunctive relief. Defendants subsequently moved to dismiss Plaintiffs' claims on the ground that Plaintiffs' allegations failed to state a claim on which relief may be granted. Defendants further asserted that they were entitled to qualified immunity and Eleventh Amendment immunity.

On June 27, 2014, the undersigned recommended that Plaintiffs' claims be dismissed save the following claims which be permitted to go forward: (1) Plaintiffs' claims seeking injunctive relief against the individual defendants in their official capacity; (2) Plaintiffs' federal law family rights claims against Defendants Brink and Swiatek in their personal capacity; (3) Plaintiffs' state law family rights claims against Defendants Brink and Swiatek in their personal capacity seeking injunctive relief; (4) Plaintiffs' state law claims for intentional infliction of emotional distress against Defendants Brink and Swiatek in their personal capacity; and (5) Plaintiffs' state law negligence claims against Defendants

Brink and Swiatek in their personal capacity. On September 15, 2014, the Honorable Janet T. Neff adopted this Report and Recommendation. (Dkt. #35). The remaining Defendants now move for summary judgment. Plaintiffs have failed to respond to Defendants' motion.

**LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth

Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**     **State and Federal Law Family Rights Claims - Defendants Brink and Swiatek**

The Supreme Court "has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). As the Supreme Court has declared, it is "plain beyond the need for multiple citation" that a parent's "desire for and right to the companionship, care, custody and management of his or her children is an interest far more precious than any property right." *Id.* (citation omitted). The "fundamental right of parents to make decisions concerning the care, custody, and control of their children" is perhaps "the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Id.* at 689-90 (citation omitted). Furthermore, the "fundamental constitutional right to family integrity extends to all family members, both parents and children." *O'Donnell v. Brown*, 335 F.Supp.2d 787, 820 (W.D. Mich. 2004).

Nevertheless, the right to familial integrity and familial association "is neither absolute nor unqualified." *Kottmyer*, 436 F.3d at 690. Specifically, the right to familial integrity is limited by an equally compelling governmental interest "in the protection of children, particularly where the

children need to be protected from their own parents." *Id.* When governmental conduct burdening a fundamental right is challenged, the government must demonstrate that its actions "are narrowly tailored to a compelling governmental interest." *O'Donnell*, 335 F.Supp.2d at 820-21. With respect to Plaintiffs' state law claims, as the Court previously recognized, the due process protections afforded under Michigan law are "no greater" than those afforded under federal law. *See, e.g., Wilson ex rel. v. University Preparatory Science and Math High School*, 2012 WL 3498889 at *3 (E.D. Mich., Aug. 14, 2012) ("Michigan's guarantees of due process. . .are construed no more broadly than federal guarnatees") (quoting *Gazette v. City of Pontiac*, 536 N.W.2d 854 (1995)).

Plaintiffs' claims against Defendants Brink and Swiatek are based upon the allegation that Defendants "deliberately and intentionally falsified their investigative reports" resulting in Amanda Tingay being placed on the central registry. Defendants have submitted the investigative reports in question. (Dkt. #75, Exhibits A-B). Defendants have submitted Plaintiffs' deposition testimony in which Plaintiffs concede that the allegations being investigated did, in fact, occur. (Dkt. #75, Exhibit C at 46-50, 67-70, 94-96; Dkt. #75, Exhibit D at 39-40, 71). Defendants have also submitted a copy of the administrative decision ordering that Plaintiff Amanda Tingay's name be removed from the Central Registry. (Dkt. #75, Exhibit E). The Administrative Law Judge (ALJ) found that the facts on which the investigation was based did, in fact, occur. (Dkt. #75, Exhibit E). The ALJ, however, characterized such behavior as merely constituting "bad judgment" and ordered that Tingay be removed from the registry. (Dkt. #75, Exhibit E). The ALJ did not find that the investigation was improper or that anybody involved with the investigation acted improperly. (Dkt. #75, Exhibit E).

Plaintiffs have been afforded ample opportunity to conduct discovery the time period for which has long since expired. (Dkt. #42). Nevertheless, in response to Defendants' properly supported

children need to be protected from their own parents." *Id.* When governmental conduct burdening a fundamental right is challenged, the government must demonstrate that its actions "are narrowly tailored to a compelling governmental interest." *O'Donnell*, 335 F.Supp.2d at 820-21. With respect to Plaintiffs' state law claims, as the Court previously recognized, the due process protections afforded under Michigan law are "no greater" than those afforded under federal law. *See, e.g., Wilson ex rel. v. University Preparatory Science and Math High School*, 2012 WL 3498889 at *3 (E.D. Mich., Aug. 14, 2012) ("Michigan's guarantees of due process. . .are construed no more broadly than federal guarnatees") (quoting *Gazette v. City of Pontiac*, 536 N.W.2d 854 (1995)).

Plaintiffs' claims against Defendants Brink and Swiatek are based upon the allegation that Defendants "deliberately and intentionally falsified their investigative reports" resulting in Amanda Tingay being placed on the central registry. Defendants have submitted the investigative reports in question. (Dkt. #75, Exhibits A-B). Defendants have submitted Plaintiffs' deposition testimony in which Plaintiffs concede that the allegations being investigated did, in fact, occur. (Dkt. #75, Exhibit C at 46-50, 67-70, 94-96; Dkt. #75, Exhibit D at 39-40, 71). Defendants have also submitted a copy of the administrative decision ordering that Plaintiff Amanda Tingay's name be removed from the Central Registry. (Dkt. #75, Exhibit E). The Administrative Law Judge (ALJ) found that the facts on which the investigation was based did, in fact, occur. (Dkt. #75, Exhibit E). The ALJ, however, characterized such behavior as merely constituting "bad judgment" and ordered that Tingay be removed from the registry. (Dkt. #75, Exhibit E). The ALJ did not find that the investigation was improper or that anybody involved with the investigation acted improperly. (Dkt. #75, Exhibit E).

Plaintiffs have been afforded ample opportunity to conduct discovery the time period for which has long since expired. (Dkt. #42). Nevertheless, in response to Defendants' properly supported

motion for summary judgment, Plaintiffs have submitted absolutely no evidence. Accordingly, the undersigned recommends that Defendants' motion be granted as to these particular claims. *See, e.g., Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) ("[w]hen a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate").

## II.        Intentional Infliction of Emotional Distress - Defendants Brink and Swiatek

To prevail on their claim of Intentional Infliction of Emotional Distress (IIED), Plaintiffs must establish the following elements: (1) defendant's extreme and outrageous conduct; (2) defendant's intent or recklessness; (3) causation; and (4) the severe emotional distress of the plaintiff. *Ghannam v. Weiss*, 2013 WL 3025143 at *1 (Mich. Ct. App., June 18, 2013). In the context of an IIED claim, "extreme and outrageous conduct" has been defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yost v. Paychex, Inc.*, 1998 WL 1989811 at *16 (Mich. Ct. App., Sept. 29, 1998) (quoting Restatement Torts, 2d. § 46); *see also*, *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (citing Michigan law).

The evidence submitted by Defendants establishes that the investigations giving rise to this matter were based upon allegations the general accuracy of which Plaintiffs have conceded. This evidence likewise demonstrates that these investigations were undertaken in good faith. Plaintiffs have submitted no evidence in response. While Defendants reached a conclusion following their investigation, that Plaintiff Amanda Tingay had engaged in child abuse or neglect, which was subsequently overturned by an ALJ, Defendants' actions cannot be characterized as extreme and

outrageous. *See, e.g., Hall v. Allstate Ins. Co.*, 2009 WL 4984842 at *4 (Mich. Ct. App., Dec. 22, 2009) (where defendant investigated and denied a claim, a determination later determined to be in error, absent evidence of a lack of good faith defendant's conduct was not sufficiently extreme or outrageous to sustain an intentional infliction of emotional distress claim). Accordingly, the undersigned recommends that Defendants' motion be granted as to these particular claims.

**III.       Negligence - Defendants Brink and Swiatek**

Plaintiffs allege that Defendants Brink and Swiatek acted negligently in this matter. Specifically, Plaintiffs allege that Brink and Swiatek negligently falsified their investigative reports concerning the allegations of abuse against Amanda Tingay. Under Michigan law, where an employee of a governmental agency is alleged to have acted negligently, the employee is entitled to immunity from such claim if the following criteria are all satisfied: (1) he was acting within the scope of his employment; (2) the agency in question was engaged in the exercise or discharge of a governmental function; and (3) the individual's conduct "does not amount to gross negligence that is the proximate cause of the injury or damage." *See Odom*, 760 N.W.2d at 228; Mich. Comp. Laws § 691.1407(2). Gross negligence is defined under Michigan law as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Horne v. Suburban Mobility Authority for Regional Transportation*, 2014 WL 2159397 at *3 (Mich. Ct. App., May 22, 2014).

As discussed above, Defendants initiated their investigations based upon allegations the general accuracy of which Plaintiffs have conceded. These investigations were undertaken in good faith and there is no evidence that Defendants acted improperly. Plaintiffs have submitted no evidence in

response. Defendants' conduct hardly constitutes gross negligence. Accordingly, the undersigned recommends that Defendants' motion be granted as to these particular claims.

### IV.       Request for Equitable Relief - All Remaining Defendants

Plaintiffs request the following equitable relief: (1) the removal of "all DHS records and foster care evaluation records" from "the file of Plaintiffs" and (2) the removal of "all records that resulted in the administrative closure of Plaintiffs' foster care license." To obtain equitable relief, Plaintiffs must establish that they are have suffered or are likely to suffer an injury which cannot adequately be remedied by legal remedies. *See, e.g., Jackson v. State of Tennessee*, 2006 WL 13215 at *4 (E.D. Tenn., Jan. 3, 2006) (citing *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974)). Plaintiffs have failed to demonstrate that they have suffered, or will in the future suffer, any cognizable injury, let alone any injury which cannot sufficiently be remedied by legal remedies. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Plaintiff's claims for equitable relief.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #73), be **granted** and this action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: December 28, 2015 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge